**McCRYSTAL et al., Appellants,**

v.

**TRUMBULL MEMORIAL HOSPITAL et al.;**
**St. Joseph Riverside Hospital, Appellee.**

[Cite as *McCrystal v. Trumbull Mem. Hosp.* (1996), 115 Ohio App.3d 73.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94–T–5055.

Decided Oct. 1, 1996.

*Greene & McQuillan Co., L.P.A., William M. Greene* and *Jean M. McQuillan,* for appellants.

*Richards & Meola and Charles L. Richards,* for appellee.

CHRISTLEY, Presiding Judge.

This appeal has been taken from a final judgment of the Trumbull County Court of Common Pleas. Appellants, Beatrice O. McCrystal and Ray Wiesner, seek the reversal of the trial court's decision to enter judgment in favor of appellee, St. Joseph Riverside Hospital, as to the four claims in their complaint.

McCrystal is the mother of three minor children, each of whom were born during her marriage to her former husband. In each of these three pregnancies, McCrystal was able to carry the child for the full term and give birth to each without any major complications, except that each was delivered by a cesarean section.

In December 1989, McCrystal was informed that she was pregnant for the fourth time. The father of this child was McCrystal's second husband, Ray Wiesner.

During this pregnancy, McCrystal was treated by Dr. Young Lee, an obstetrician. Although he was not an employee of St. Joseph's, Dr. Lee did see some of his patients at the Women's Care Clinic, which is directly associated with St. Joseph.

Early in the pregnancy, McCrystal told Dr. Lee that she wished to have a tubal ligation following the birth of the child. In response, Dr. Lee told McCrystal that since St. Joseph did not permit the performance of a tubal ligation on its premises, the birth would have to take place at a second hospital, Trumbull Memorial Hospital. Dr. Lee also told her that, as had been the case in her first three pregnancies, it would again be necessary to deliver the child by a cesarean section.

During most of the pregnancy, McCrystal did not have any major problems. However, on May 10, 1990, she went to the emergency room at Trumbull Memorial, complaining of cramping. She went to that particular hospital, instead of St. Joseph, because it was fairly close to her residence and Dr. Lee had told

her to go there if she thought she was going into labor. After being examined, McCrystal was told that she had a bladder infection and was then released.

Four days later, McCrystal had a regular checkup with Dr. Lee. Again, upon being examined, she was told that both she and the child were fine, and that Dr. Lee did not need to see her until her next regular appointment.

On the morning of May 16, 1990, McCrystal again began to experience cramping. As a result, she again decided to go the emergency room at Trumbull Memorial. After being examined, she was assured that she was not going into labor. Accordingly, she went back to her residence upon being released.

At approximately 1:30 p.m. that same day, McCrystal went to Trumbull Memorial for a second time. This time, the staff performed a specific test to determine whether her contractions had started. When the results of the test were negative, McCrystal was again assured that she was fine.

Immediately after returning to her home, McCrystal noticed that she was bleeding from her vagina. However, instead of going back to Trumbull Memorial, McCrystal telephoned the Women's Care Center at St. Joseph and spoke with Nurse Mary Wadja. Based upon the advice which she received from Nurse Wadja, McCrystal stayed at home and waited to see if the bleeding would stop.

When the bleeding persisted, McCrystal decided to contact Dr. Lee. Although she was only able to reach his answering service, Dr. Lee eventually returned her call at approximately 5:30 p.m. Again, based upon the advice which she received from Dr. Lee, McCrystal stayed at home and simply tried to relax.

Over the next few hours, McCrystal attempted to rest. However, on three separate occasions, she had to get up in order to vomit in the bathroom. Moreover, during this period, she was still experiencing bleeding from her vagina. Finally, at approximately 11:00 p.m., McCrystal was sitting on her couch when she felt "a lot of fluttering" in her stomach. Soon thereafter, Wiesner drove McCrystal back to the emergency room at Trumbull Memorial.

After Dr. Lee had been summoned to the hospital, an emergency operation was performed on McCrystal. The results of the operation showed that she had suffered a ruptured uterus. The rupture had occurred along one of the scars from a prior cesarean section. However, even though she lost a large amount of blood when the rupture occurred, McCrystal recovered fairly quickly and was released from the hospital within a week after the operation.

As to the child, Dr. Lee was able to deliver her as part of the emergency operation. However, as a result of the damage to the uterus, the child suffered considerable brain damage because she did not receive any oxygen for a sustained period. Specifically, the child suffered from cerebral palsy, which

caused her to be unable to perform any physical functions, including swallowing or sucking.

Immediately after her birth, the child, who was named Jessica, was taken to a third hospital for care. Approximately one month later, McCrystal and Wiesner were able to take Jessica home. Nevertheless, because of Jessica's problems, they were required to care for her twenty-four hours a day. This included feeding her through a tube in her stomach.

This arrangement lasted for nearly five months. In November 1990, McCrystal and Wiesner had to admit Jessica to the hospital again because she had contracted pneumonia. Once she had sufficiently recovered, Jessica was placed in a nursing home because McCrystal and Wiesner were no longer able to take care of her. Jessica then died in February 1991.

Three months after Jessica's death, McCrystal brought the instant action, on behalf of herself individually and as the administrator of Jessica's estate, against St. Joseph. Wiesner was also named individually as a plaintiff. In their second amended complaint, McCrystal and Wiesner essentially asserted four claims: (1) McCrystal's personal claim covering the injuries she suffered as a result of Nurse Wadja's alleged negligence in not handling her telephone call properly, (2) McCrystal's and Wiesner's claim for loss of Jessica's consortium, (3) the estate's survivoral claim, covering the pain and suffering Jessica endured before she died, and (4) a wrongful death claim.

In answering the second amended complaint, St. Joseph denied that Nurse Wadja and other members of the Women's Care Center's staff had been negligent in handling the telephone call. St. Joseph further asserted that any injuries suffered by McCrystal and Wiesner had been proximately caused by their own negligence only. In addition, St. Joseph raised the defense of comparative negligence.

In a separate action, McCrystal and Wiesner sued Dr. Lee and Trumbull Memorial Hospital, asserting the same basic claims which they had raised against appellee. This second action was subsequently consolidated with the action against appellee. Prior to trial, though, McCrystal and Wiesner voluntarily dismissed Trumbull Memorial as a party to the case. Moreover, McCrystal and Wiesner negotiated a pretrial settlement with Dr. Lee.

A five-day jury trial was held in March 1994. As part of her trial testimony, McCrystal stated that when she spoke to Nurse Wadja on the phone, she specifically informed Nurse Wadja that she was bleeding to such an extent that the blood was clotting. McCrystal further stated that Nurse Wadja never asked any specific questions concerning her condition, and that the only advice Nurse Wadja gave her was to call back if the bleeding got heavier.

On behalf of St. Joseph, Nurse Wadja testified as to the following: (1) McCrystal only told her that she had passed "some" blood; (2) Nurse Wadja interpreted McCrystal's statement to mean that she was merely "spotting," and that there was no need to ask McCrystal any more questions concerning the extent of the bleeding; (3) before making any type of statement to McCrystal, Nurse Wadja explained the situation to her superior, who told Nurse Wadja that it was not uncommon for a woman to bleed slightly after the type of examination which McCrystal had just received at Trumbull Memorial; and (4) based upon this, Nurse Wadja told McCrystal that she needed to go back to Trumbull Memorial only if the bleeding persisted.

As part of its case, St. Joseph also presented evidence that tended to show that McCrystal and Wiesner had been negligent in not going back to Trumbull Memorial sooner. Nevertheless, at the close of the evidence, St. Joseph requested that the trial court not give an instruction on comparative negligence, even though it had pled the doctrine as an affirmative defense in its answer. Counsel for McCrystal and Wiesner objected, arguing that it would confuse the jury not to give such an instruction after St. Joseph had presented some evidence tending to show that McCrystal and Wiesner had been negligent. The trial court overruled the objection and did not give an instruction on the doctrine.

However, at the request of McCrystal and Wiesner, the trial court did give the jury the following cautionary instruction:

"[I]f you find the defendant hospital was negligent, and if you find that negligence was a proximate cause of injury to the plaintiffs, you are not to concern yourselves in any way with any suggested or actual negligence on the part of the [plaintiffs]. That's simply not an issue in this case. Of course, if [the plaintiffs'] negligence were the sole cause of injury, that would be different. If you find [the defendant's] negligence the proximate cause of the [injury], don't attempt to deal with any possible negligence on the [plaintiffs'] part."

In addition to the foregoing instruction, the trial court also instructed the jury on the issue of intervening cause. As part of this instruction, the court informed the jury that it could find that any negligence on the part of Nurse Wadja and the Women's Care Center's staff had not been the proximate cause of the harm if it found that Dr. Lee's negligence was an intervening cause. Counsel for McCrystal and Wiesner objected to this instruction.

Besides being required to render general verdicts as to each of the four claims, the jury was requested to answer four special interrogatories. In two of the interrogatories, the jury was asked the following: (1) did any of St. Joseph's employees, including Nurse Wadja, act negligently in taking McCrystal's phone call; and (2) if any of St. Joseph's employees were negligent, was this negligence a proximate cause of the injuries and damages?

In rendering its decision, the jury returned general verdicts in favor of St. Joseph as to each of the four claims. In relation to the first interrogatory, the jury could not reach a verdict on the issue of St. Joseph's negligence; the verdict form indicated only that five of the jurors had found that St. Joseph's employees had not been negligent and three jurors found that they had been. As to the second interrogatory, the jury unanimously found that any alleged negligence on the part of St. Joseph's employees had not been a proximate cause of the injuries and damages.

After the jury had rendered its verdict, the trial court issued a decision in which it entered judgment in favor of St. Joseph, appellee. In now appealing from this decision, McCrystal and Wiesner, appellants, have assigned the following as error:

"1. The trial court erred in refusing to instruct the jury on the law of comparative negligence and failing to submit to them the mandated comparative negligence interrogatories of R.C. 2315.19(B).

"2. The trial court erred in instructing on and submitting to the jury the issue of superseding cause."

As was noted above, at the close of the evidence, appellee moved that the jury not be instructed on the doctrine of comparative negligence. After appellants had objected, the trial court overruled the objection and did not give any instruction on the doctrine. Under their first assignment, appellants argue that the court erred in granting appellee's motion because, given the nature of the evidence which appellee presented, the failure to give such an instruction confused the jury.

In support of their argument, appellants cite *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583. In *Marshall,* the plaintiffs moved at the close of the evidence for a directed verdict on the issues of negligence and proximate cause. After the defendants objected to the plaintiffs' motion and also requested an instruction on comparative negligence, the trial court denied both the plaintiffs' motion and the defendants' instruction request. The jury subsequently returned a verdict in favor of the defendants.

After the appellate court had affirmed the jury verdict, the plaintiffs in *Marshall* appealed to the Supreme Court of Ohio, arguing that the verdict had been against the manifest weight of the evidence. Choosing to disregard this issue, the Supreme Court reversed solely upon the basis that the trial court had erred in not giving the defendants' proposed instruction on comparative negligence when it had been warranted under the evidence. Although not expressly stated in the opinion, the court apparently held that the failure to give the instruction constituted plain error.

In concluding that the plaintiffs had been denied a fair trial because the lack of a comparative negligence instruction had misled the jury, the *Marshall* court emphasized that a trial court's instructions to the jury must be consistent with the pleadings and evidence in the case:

"[T]his court stated in *Simko v. Miller* (1938), 133 Ohio St. 345, 358 [10 O.O. 535, 541, 13 N.E.2d 914, 920], as follows: 'A jury is entitled to receive from the court such instructions in the general charge as will fully place it in possession of the issuable facts in controversy as pointed out by the pleadings and the evidence. * * *.' The court concluded that inasmuch as the issues raised by the pleadings were not fairly presented to the jury, prejudice resulted and a new trial was warranted. *Id.*

"It is thus clear that an incomplete charge will constitute grounds for reversal of a judgment where the charge as given misleads the jury. See *Columbus Ry. Co. v. Ritter* (1902), 67 Ohio St. 53 [65 N.E. 613]. A caveat expressed by this court long ago is still relevant today: A charge ought not only be correct, but it should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury. *Aetna Ins. Co. v. Reed* (1878), 33 Ohio St. 283, 295." *Marshall,* 19 Ohio St.3d at 12, 19 OBR at 10, 482 N.E.2d at 585.

■ In the instant appeal, appellee raised the defense of comparative negligence in its answer to appellants' second amended complaint. Moreover, our review of the trial transcript indicates that appellee presented evidence that tended to show that appellants had been negligent in not going to the hospital sooner. For example, one of appellee's expert witnesses testified that if McCrystal's description of the amount of blood flow was accurate, appellants should have realized that, regardless of what Nurse Wadja and Dr. Lee had said, something was wrong. Appellee also presented testimony indicating that although McCrystal felt the fluttering at approximately 11:00 p.m., she and Wiesner did not arrive at Trumbull Memorial Hospital until after 12:35 a.m.

Thus, as in *Marshall,* both the pleadings and the evidence in this case support the conclusion that an instruction on comparative negligence was warranted because there was evidence from which the jury could find that both parties had been negligent.

Of course, the *Marshall* case differs from the instant case in one important respect. In *Marshall,* it was the defendants who requested that the instruction on comparative negligence be given. In contrast, it was the plaintiffs in the instant case who asked for the instruction after the defendant had expressly stated that it did not want the instruction given.

However, the wording of the *Marshall* decision supports the inference that the plaintiff in a negligence action can properly object to the failure to give the

instruction because the plaintiff will be prejudiced. As to this point, this court again notes that the *Marshall* court emphasized that the failure to give the instruction had resulted in an unfair trial. We also note that the *Marshall* court based its decision solely upon this issue, even though it was the plaintiffs who were appealing.

Although not expressly stated, the *Marshall* decision was clearly based upon the proposition that once evidence as to the possible negligence of the plaintiff has been presented to the jury, the failure to give a comparative negligence instruction could be prejudicial to the plaintiff because the jury could conclude that the plaintiff would never be entitled to recover if she was also negligent.

In turn, if the jury based its verdict upon such a conclusion, the failure to give the instruction would have the same effect as the prior defense of contributory negligence, *i.e.*, the finding of some negligence on the part of the plaintiff would completely bar her recovery from the defendant. Such an outcome would conflict with R.C. 2315.19, the comparative negligence statute.

As an aside, this court notes that our review of the trial transcript indicates that, despite the fact that it had withdrawn the defense of comparative negligence, appellee believed that it could still raise the general issue of appellants' negligence. As to this point, the transcript shows that even after appellee's trial counsel had specifically requested that the trial court not give a comparative negligence instruction, counsel still asserted, during closing argument, that the evidence supported the finding that appellants had been negligent. In making such an argument, counsel was essentially contending that appellee could not be held liable because appellants had been solely negligent.

A review of the common law of this state prior to 1980 indicates that the allegation of sole negligence on the part of the plaintiff was recognized as a valid issue which a defendant could raise in a negligence action. The allegation was not considered an affirmative defense like contributory negligence but, instead, was an extension of the defendant's general denial of its own alleged negligence. In essence, an allegation of sole negligence was a vehicle by which the defendant could present evidence concerning the plaintiff's alleged negligence without having to carry the burden of proof associated with an affirmative defense. See *Hanna v. Stoll* (1925), 112 Ohio St. 344, 147 N.E. 339; *Cincinnati St. Ry. Co. v. Adams* (1929), 33 Ohio App. 311, 169 N.E. 480.

Further research on this point indicates that, since the enactment of R.C. 2315.19 in 1980, no court in this state has expressly addressed the issue of whether an allegation of sole negligence can still be asserted separately from the defense of comparative negligence. Moreover, although there have been a

limited number of cases in which courts have implicitly held that the allegation was still feasible, these cases have had peculiar fact patterns.

For example, in *Syed v. Mika* (May 24, 1993), Mahoning App. No. 92 C.A. 44, unreported, 1993 WL 177531, the parties were involved in a two-vehicle accident at an intersection that had a traffic light. At trial, the parties presented conflicting evidence as to who had had the green light. Moreover, neither party presented any other evidence showing that the other party had acted negligently in any other manner.

In appealing from the jury verdict in favor of the defendant, the plaintiff argued that the trial court had erred in instructing the jury on comparative negligence. In concluding that the argument had merit, the Seventh Appellate District emphasized that, under the specific facts of the case, both parties could not have been negligent:

"The issue here is whether or not evidence in the record at least inferentially indicated comparative negligence on the part of one of the parties. [The plaintiff] argues it did not. [The defendant] concede[s] in [her] brief that the evidence throughout the trial was that either plaintiff or defendant ran a red light. * * * [The defendant] also contended at oral arguments that the only way to raise the issue of plaintiff's negligence is to instruct on comparative negligence. We disagree. It is plaintiff's burden to establish negligence committed by the defendant. In this case, if plaintiff went through the red light, he was completely negligent and unable to meet his burden as instructed by the trial court. The issue of plaintiff's negligence was therefore before the jury without any mention of comparative negligence, which is a separate issue unsubstantiated by the evidence." *Id.* at 4.

Without specifically commenting upon the merits of the *Syed* holding, this court notes that it is extremely rare that the facts of a case would be such that a finding of negligence on the part of one party would foreclose the possibility of such a finding as to the other party. Under most circumstances, the defendant's introduction of evidence as to the plaintiff's alleged negligence raises the possibility that the jury could find that both parties were negligent. This is the exact type of situation, of course, to which the Ohio General Assembly intended the defense of comparative negligence to apply.

In turn, under *Marshall*, if the evidence table is such that a finding of mutual negligence is possible, a trial court is required to give an instruction on comparative negligence because, without it, the charge to the jury is inconsistent with the evidence. That is, in this type of situation, a defendant cannot rely solely upon an allegation of sole negligence because that defense does not cover all possible findings which could be made from the evidence presented.

Accordingly, this court holds that the trial court erred in not instructing the jury on comparative negligence because such an instruction was warranted under the facts. We further hold that the trial court's cautionary instruction to the jury on this matter did not render the error harmless because, even if the jury did not consider the evidence of appellants' alleged negligence in determining whether appellee had been negligent, it still could have ultimately concluded that appellants were not entitled to any recovery as a result of their negligence.[1]

As part of its response to this assignment, appellee contends that any error on the part of the trial court as to this issue was harmless under the specific facts of this case. In support of this assertion, appellee cites the fact that, in responding to the special interrogatories, the jury found that any negligence on the part of appellee's employees was not the proximate cause of appellants' injuries.[2]

In relation to the issue, this court again emphasizes that, if a jury is presented evidence concerning the possible negligence of the plaintiff and then returns a general verdict in favor of the defendant on the basis that the defendant was not negligent, the failure to instruct the jury on the comparative negligence will always be prejudicial to the plaintiff when the evidence is such that both parties could be found negligent. The lack of the instruction raises the possibility that the jury found in favor of the defendant only because it did not know that the plaintiff could still recover even if she was also negligent.

The foregoing analysis would also be applicable to the issue of proximate cause. Unless a jury is informed that a finding of proximate cause as to the plaintiff's

---

1. As was previously noted, the trial court's cautionary instruction contained the statement that appellants' negligence could be considered if it was the "sole cause" of the injury. Technically, an allegation of sole proximate cause is different than the allegation of sole negligence. However, it has generally been held that an allegation of sole proximate cause cannot be asserted under a comparative negligence scheme similar to the one employed in this state. See Schwartz, Comparative Negligence (2 Ed.1986) 86, Section 4.5.

2. As an aside, this court notes that the jury technically should not have considered the second interrogatory. The verdict form for that interrogatory stated that the jury should consider the issue of proximate cause only if it found that appellee's employees had been negligent. However, in considering the negligence issue, the jury was unable to reach a verdict. As was noted above, the jury indicated on the verdict form for the first interrogatory that only three members of the jury had concluded that appellee's employees had been negligent.

In reviewing the trial transcript, though, we have failed to find any indication that appellants objected to the fact that the jury did not render a verdict as to the first interrogatory. Accordingly, appellants waived the right to contest the validity of the procedure followed by the jury as to the first interrogatory. See *Simpson v. Springer* (1943), 74 Ohio App. 142, 29 O.O. 295, 57 N.E.2d 817.

Likewise, the transcript does not show that appellants objected to the fact that the jury considered the issue of proximate cause without rendering a verdict as to the first interrogatory. Thus, because appellants also waived any error as to the validity of that particular procedure, we will consider the jury's response to the second interrogatory under the harmless error analysis.

negligence does not foreclose a finding of proximate cause in relation to the defendant's negligence, the jury might assume that there cannot be concurrent proximate causes under the law of comparative negligence. As this type of analysis by the jury would not be consistent with R.C. 2315.19, the comparative negligence statute, the failure to give the instruction cannot be harmless error.

Finally, in relation to the first assignment, appellee submits that the jury's general verdicts as to appellants' four claims must be upheld under the two-issue rule. As to this argument, this court simply notes that the two-issue rule simply cannot be applied to the scenario in this case:

■ "Restated, the [two-issue] rule will generally be applied ' * * * where there are two causes of action or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, *and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party * * *.*' (Emphasis added.) *H.E. Culbertson v. Warden* (1931), 123 Ohio St. 297, 303, 175 N.E. 205, 207." *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 266, 273, 598 N.E.2d 1187, 1191.

■ In applying the two-issue rule, the courts of this state have generally held that the rule cannot be invoked when the two issues consist of two elements of one cause of action. See *Parker v. Copey's Butcher Shop* (Dec. 14, 1992), Clark App. No. 2820, unreported, 1992 WL 364618, citing *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724. Since negligence and proximate cause are elements of the same cause of action, the two-issue rule simply cannot be applied in this instance.

Pursuant to the foregoing discussion, appellants' first assignment is well taken.

■ As part of its charge to the jury, the trial court instructed the jury that even if it found that Nurse Wadja had been negligent, it could still find that this negligence had not been a proximate cause of the injuries if it also found that the negligence of Dr. Lee constituted an intervening cause. Under their second assignment, appellants submit that the trial court erred in giving this instruction to the jury. Essentially, they maintain that the doctrine of intervening cause has no application to the facts of this case because the chain of causation between a nurse's negligent act and the resulting injuries can never be broken by the intervening negligence of a third party.

As a preliminary matter, this court notes that, even though appellants' four claims were predicated upon the alleged negligence of Nurse Wadja and her

supervisor, they brought the instant action solely against appellee. Thus, the actual issue under this assignment is whether appellee, a hospital, can be absolved from liability as a result of the intervening negligence of Dr. Lee.

■ As a general proposition, the negligence of an original tortfeasor will not be deemed a proximate cause of an injury if it is superseded by the negligence of an intervening tortfeasor:

"The Supreme Court of Ohio has consistently defined an intervening cause as an act or force which breaks the causal connection between the original negligent act and the resulting injury. *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 37 [41 O.O. 117, 120, 90 N.E.2d 859, 862–863]. To constitute an intervening cause, the second negligent act must be both 'independent' and 'new.' In the context of this analysis, the second act is 'independent' from the original act if it was not brought into operation by the original act; *i.e.,* the second act must not have occurred as a result of the first. To be considered 'new,' the second act must not have been reasonably foreseeable when the original act occurred. *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 269 [617 N.E.2d 1068, 1071–1072].

"If both prongs of the foregoing definition are satisfied, the second negligent act becomes the sole proximate cause of the resulting injury. As an intervening cause, the second act 'superseded' the original act, and the original tortfeasor is absolved from any liability. On the other hand, if the second act does not satisfy the two requirements for an intervening cause, the original act is still a proximate cause. *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (Nov. 24, 1993), Hamilton App. Nos. C–920088 and C–920112, unreported [1993 WL 538922]." *Evanoff v. Ohio Edison Co.* (Nov. 10, 1994), Portage App. No. 93–P–0015, unreported, at 20–21, 1994 WL 652635.

In essentially asserting that, as a matter of law, Dr. Lee's negligence could not have satisfied the foregoing definition of an intervening cause, appellants note that the Supreme Court of Ohio has consistently held that the malpractice of a physician can never be superseded by the negligence of a subsequent tortfeasor. See *Travelers Indem. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787. Citing recent precedent in this area of the law, appellants then argue that the physician exception to the intervening-cause doctrine should be extended to hospitals and nurses.

In *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014, the plaintiff brought an action against a doctor and the hospital. In relation to the hospital, the plaintiff's allegation of negligence was predicated upon the actions of a nurse,

who was an employee of the hospital. As part of it analysis in the case, the Supreme Court specifically addressed the issue of an intervening cause:

"Thus, we hold that the intervening negligence of an attending physician does not absolve a hospital of its prior negligence if both co-operated in proximately causing an injury to the patient and no break occurred in the chain of causation between the hospital's negligence and the resulting injury. In order to break the chain, the intervening negligence of the physician must be disconnected from the negligence of the hospital and must be of itself an efficient, independent, and self-producing cause of the patient's injury." *Id.* at 585, 613 N.E.2d at 1025.

The foregoing statement does not support the inference that the *Berdyck* court intended for the physician exception to an intervening cause to extend to the employees of a hospital. Instead, it is clear that the negligence of a subsequent tortfeasor can supersede the negligence of a hospital. Moreover, it is also clear that the basic definition of an intervening cause, as set forth in *Evanoff*, is applicable.

In this case, there was considerable evidence from which the jury could conclude that the negligence of Dr. Lee was both new and independent from the negligence of appellee's employees. Thus, as the trial court did not err in giving an instruction on intervening cause, appellants' second assignment is without merit.

Pursuant to our discussion under the first assignment of error, the judgment of the trial court is reversed, and the case is hereby remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

JOSEPH E. MAHONEY and NADER, JJ., concur.