JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants Estate of Paul Nord, et al. ("plaintiffs") appeal from the trial court's decision that granted defendant-appellee Motorists Mutual Insurance Company's ("Motorists") motion for summary judgment. For the reasons that follow, we reverse and remand
 {¶ 2} On February 26, 2001, the decedent Paul Nord was being transported by a Cleveland EMS ambulance. Mr. Nord received medical treatment from a paramedic en route to the hospital. During this process, the paramedic dropped a syringe that landed in Mr. Nord's eye causing injury and related medical expenses. The parties agree that the paramedic accidentally dropped the syringe. Mr. Nord later died from unrelated causes and his estate pursued an uninsured motorist claim against Motorist.
 {¶ 3} The trial court granted Motorists' motion for summary judgment on the following grounds: "The injury to plaintiff's eye which occurred when a paramedic accidentally dropped a syringe while plaintiff was being transported to Fairview Hospital did not arise out of the ownership, maintenance or use of an uninsured motor vehicle. The instrumentality causing the injury was not an uninsured motor vehicle, but the EMS technician occupying the vehicle. Further, bad faith was not established since the defendant was reasonably justified in not paying the claim."
 {¶ 4} Plaintiffs allege a sole assignment of error for our review:
 {¶ 5} "I. The trial court erred in granting defendant's motion for summary judgment since there was a genuine issue of material fact."
 {¶ 6} We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment
(1998), 124 Ohio App.3d 581, 585.[1]
 {¶ 7} The parties focus our attention upon the following uninsured motorist provisions of the policy Motorists issued to the decedent:
 {¶ 8} "A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of:
"1. An uninsured motor vehicle as defined in Section 1., 2., and 4. of an uninsured motor vehicle because of bodily injury:
"a. Sustained by an insured; and
"b. Caused by an accident.
"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle * * *."
 {¶ 9} The policy further defines "Uninsured motor vehicle," in pertinent part, as follows:
"C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:
"1. To which no bodily injury liability bond or policy applies at the time of the accident.
"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage.
"* * *
"4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
"a. Denies coverage; or
"b. Is or becomes insolvent."
Ohio's uninsured and underinsured motorist coverage statute R.C. 3937.18
further includes owners or operators of vehicles who have immunity under Chapter 2744 of the Revised Code within the definition of "uninsured motorists."[2] It is not disputed that the owner or operator of the ambulance had immunity.
 {¶ 10} Thus, the crux of this coverage case is whether it can be said as a matter of law that the accidental dropping of the syringe in Mr. Nord's eye during his transport to the hospital did not arise out of the ownership, maintenance, or use of the ambulance. Plaintiffs maintain that reasonable minds could conclude that the injuries arose out of the ownership, use, or maintenance of the ambulance. We agree.
 {¶ 11} "`Courts have set forth some basic guidance in determining what constitutes "use" by declaring that the term "`use'" has a broader meaning than the word "operate." * * * [A] motor vehicle may be in the owner's use, even though the owner is not operating the vehicle, when the vehicle is being used for the owner's benefit, advantage, purpose, or in furtherance of the owners' interests.' Plessinger v. Cox, Darke App. Nos. 1428, 1429, unreported." Grange Mutual Cas. Co. v. Darst (1998),129 Ohio App.3d 723, 727.
 {¶ 12} In Darst, plaintiff's son died when his mother left him unattended in his car seat and he set the car afire with matches he found inside. The parents' auto liability policy excluded coverage due to an intrafamily exclusion and the trial court held that uninsured motorist coverage was barred because the injuries did not arise out of the ownership, maintenance or use of the uninsured vehicle. The appellate court reversed and found that the accident arose out of (and was thus causally connected to) the negligent parents' ownership, maintenance or use of the vehicle. Id. at 729.
 {¶ 13} In reaching this conclusion, the court in Darst reasoned that "the issue is not whether the vehicle itself was the instrumentality of the underlying injuries. Rather, the issue is whether the operator's ownership, maintenance and use of the vehicle was. It was if the injuries arose out of any of those factors. The phrase `arising out of' has been defined by courts as `originating from,' `growing out of,' and `flowing from.' [citations omitted]. Although the phrase implies that there must be a causal connection between the ownership, maintenance, or use of the uninsured motor vehicle and the insured's injuries, courts have stressed that the issue is not one of proximate cause. Rather, `it is sufficient if the [ownership, maintenance, or] use is connected with the accident or the creation of a condition that caused the accident * * * [and that] there be a factual connection growing out of or originating with the [ownership, maintenance, or] use of the vehicle." Id. at 727.
 {¶ 14} In this case, the decedent's injuries arose from the accidental dropping of the syringe. The ambulance, by its very nature, is equipped with syringes for use by EMTs. Thus, the presence of the syringe and the technician could be viewed as part and parcel of the ownership, maintenance or use of the ambulance. The fact that the injuries arose by virtue of a true accident rather than an unsuccessful medical procedure en route to the hospital is not in dispute. Thus, we find that reasonable minds could conclude that these particular injuries arose out of the ownership, maintenance or use of an uninsured motorist vehicle.
 {¶ 15} We are mindful of Motorists' reliance upon Kish v. CentralNational Ins. Group of Omaha (1981), 67 Ohio St.2d 41 and its progeny, which hold that, "the shotgun slaying of an insured following an automobile collision, which was accidental as to the insured, did not `arise out of the ownership, maintenance or use of an uninsured vehicle' for purposes of uninsured motorist coverage, * * * for purposes of automobile accident coverage." Id. paragraph 3 of the syllabus. On this basis, Motorists contends that the paramedic's action in dropping the syringe was an intervening cause of the decedent's injuries.
 {¶ 16} Kish instructs that "the relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." Id. at 50, emphasis added. The injury must result from an act wholly disassociated from and independent of the use of the vehicle as such. Cases concerning the availability of uninsured motorist coverage for criminal acts committed within automobiles are not squarely on point. SeeGrange, 129 Ohio App.3d at 728, noting that in Kish and its progeny "the intervening cause of injury was disconnected from any negligence involved in the actor's operation, maintenance, or use of the motor vehicle.") These cases are simply unhelpful in determining whether injuries sustained from accidents caused by instrumentalities typically used in ambulance travel arise out of the use of the ambulance. If the underlying facts established an act wholly disconnected from the use of the ambulance, such as if the EMT shot the decedent with a gun, we would reach a different conclusion under the law. That is not the case and we therefore cannot conclude that the injury to the decedent's eye resulted from an act wholly disassociated from the use of the ambulance as such and as a matter of law. For these reasons, the assigned error has merit and is sustained.
 {¶ 17} Judgment reversed and remanded for further proceedings consistent with this opinion.
ANTHONY O. CALABRESE, JR., J. CONCURS.
 COLLEEN CONWAY COONEY, J., DISSENTS.
[1] Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274." Zivichv. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70, 1998-Ohio-389.
[2] While the parties seem to implicitly disagree over which version of the statute applies in this case, the versions effective November 1999, September 2000, and the current version of the statute contain this provision. Compare R.C. 3937.18(A)(1) in version effective November 2, 1999 and September 21, 2000 with R.C. 3937.18(B)(5), the version effective October 31, 2001.