**PROGRESSIVE PREFERRED INSURANCE COMPANY, Appellant,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S LONDON, Appellee.**

[Cite as *Progressive Preferred Ins. Co. v. Certain Underwriters at Lloyd's London,* 166 Ohio App.3d 1, 2006-Ohio-1442.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2004–L–174.

Decided March 24, 2006.

2

Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Daniel A. Richards, and Jay S. Hanson, for appellant.

Mazanec, Raskin & Ryder Co., L.P.A., Todd M. Raskin, and Jeffrey T. Kay, for appellee.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Appellant, Progressive Preferred Insurance Company ("Progressive"), appeals from the judgment of the Lake Count Court of Common Pleas, granting summary judgment to appellees, Certain Underwriters at Lloyd's London ("Lloyd's"), on a declaratory action and denying Progressive's summary-judgment motion. We affirm in part, reverse in part, and remand this matter.

{¶ 2} This case originates in an accident occurring November 9, 2001, when Ann Crum–Griesmer, an employee of Summerville Assisted Living in Mentor, Ohio, took 13 Summerville residents on a field trip. Her husband, Jerome Griesmer, volunteered to help her amuse the Summerville residents on the trip, which was a scenic tour in a van owned by Summerville. Janet Schmidt was one of the residents on the trip. Schmidt was strapped into a secured wheelchair at the back of the van. According to the Griesmers' deposition testimony, they later became aware that Schmidt had a tendency to fall.

{¶ 3} Crum–Griesmer became confused regarding directions and decided to stop at a friend's house to get new ones. While turning into her friend's driveway, Crum–Griesmer got the passenger side rear wheel of the van stuck in a culvert, but Schmidt was uninjured.

{¶ 4} While waiting for a tow truck to arrive, two of the Summerville residents in the van needed to use the bathroom. While the Griesmers testified in their depositions that the van was not sitting at an angle that would cause someone to fall, the passenger-side doors of the van could not be opened because they were partially blocked by the ground. The only door through which these passengers could exit was blocked by Schmidt's wheelchair and, evidently at her request, Schmidt was removed from the secured wheelchair she occupied to another, which had no strap, so that the residents could exit the van. Schmidt was never returned to her secured wheelchair. According to the Griesmers, Schmidt fell out of her unsecured wheelchair over an hour after she had been seated in it, though neither of the Griesmers saw her fall. Schmidt later died, allegedly from injuries suffered as a result of her fall in the van.

{¶ 5} Schmidt's son and executor filed a wrongful-death and survivorship action in the Lake County Court of Common Pleas. The second amended complaint in that action included allegations that Schmidt's injuries occurred due to negligent operation of the van, "and/or" negligence in allowing her to fall in the van, "and/or" negligent supervision of her. Progressive had issued a business-automobile-insurance policy to Summerville. Summerville was also insured under a health care facilities professional, general, and employee-benefit liability policy issued by Lloyd's. Each policy had limits of one million dollars per accident.

{¶ 6} Progressive assumed defense of Summerville against the wrongful-death and survivorship action under a reservation of rights. Lloyd's denied any duty to defend or indemnify. Progressive settled the underlying action in August 2003, for $300,000. Then, it brought a declaratory action against Lloyd's, pursuant to R.C. 3937.21, seeking contribution and/or indemnification from Lloyd's. Lloyd's answered and filed its own declaratory action, seeking a finding of no coverage.

{¶ 7} Both Progressive and Lloyd's moved for summary judgment. The principal argument of Lloyd's in support of its motion was that an exclusion set forth at Section I.3(D) 18 of its policy precluded coverage of the Schmidt suit. That exclusion provides that no coverage shall be available for any "Claim" arising out of "[t]he ownership, maintenance, use or entrustment of any * * * 'Auto' * * *owned or operated by or for the benefit or rented or loaned to any 'Insured.' Use includes operation and 'loading and unloading.' "

{¶ 8} On September 29, 2004, the trial court issued its ruling on the summary-judgment motions. In a thorough, concise, and well-reasoned opinion, the trial

court determined that Lloyd's was entitled to summary judgment on the basis of the aforementioned exclusion. The trial court premised its decision, principally, upon the decisions of the courts in *Grange Mut. Cas. Co. v. Darst* (1998), 129 Ohio App.3d 723, 719 N.E.2d 24, and *Estate of Nord v. Motorists Mut. Ins. Co.*, 8th Dist. No. 82857, 2003-Ohio-6345, 2003 WL 22806008, which, itself, largely relies on *Darst*. The trial court rejected Progressive's summary-judgment motion. From this judgment, Progressive timely appealed, making three assignments of error:

{¶ 9} "[1.] The Trial Court Erred by Denying Progressive's Motion For Summary Judgment, Granting Lloyd's Motion for Summary Judgment and Holding That Lloyd's Owes No Coverage for the Negligent Control of Wheelchair, Negligent Supervision and Negligent Care Allegations Made Against the Summerville Defendants in the Schmidt Lawsuit Due to the Auto Exclusion in Lloyd's Policy.

{¶ 10} "[2.] The Trial Court Erred by Holding That Lloyd's Owed No Duty to Defend the Summerville Defendants for the Allegations in the Schmidt Wrongful Death Lawsuit That the Summerville Defendants Did 'Negligently * * * Control the Wheelchair * * * Negligently Permit Janet Lewis Schmidt to Fall * * * And/or Failed Negligently * * * to Properly Maintain and Control And/or Supervise Janet Lewis Schmidt' as Alleged in Paragraph 11 of the Second Amended Complaint.

{¶ 11} "[3.] The Trial Court Erred by Failing to Hold That Lloyd's Owes Primary Coverage for the Underlying Wrongful Death Claims."

{¶ 12} In order for a summary judgment to be granted, the moving party must prove:

{¶ 13} "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. The Ohio Supreme Court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264:

{¶ 14} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis sic.)

{¶ 15} We note that Lloyd's contends that the proper standard of review when Civ.R. 56 is applied in declaratory actions is abuse of discretion. This is incorrect. Cf. *Johnson v. Auto–Owners Ins. Co.*, 11th Dist. Nos.2002–L–123 and 2002–L–131, 2005-Ohio-237, 2005 WL 124078, ¶ 5–6, 12. Appellate courts review a trial court's grant of summary judgment de novo. Id. at ¶ 12; *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. *Brown* stated, "[W]e review the judgment independently and without deference to the trial court's determination." Id. at 711, 622 N.E.2d 1153. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.

{¶ 16} We deal with the assignments of error in order, because the resolution of the latter two depends upon the first: whether the trial court was correct in determining that Lloyd's had no duty to defend or indemnify in the underlying wrongful death and survivorship action.

{¶ 17} Again, the trial court largely based its decision on the opinions of the Second Appellate District in *Darst* and the Eighth Appellate District in *Nord*. The courts in *Darst* and *Nord* were each presented with insurance-policy language substantially similar to that contained within the subject Lloyd's exclusion. In *Darst*, the mother of two-year-old twins drove with her boys to her sister's house and left them in the car while she entered the home. *Darst*, 129 Ohio App.3d at 724, 719 N.E.2d 24. One of the boys found some matches and set the car on fire, resulting in the death of one twin and the severe burning of the other. Id. Grange Mutual, which covered the Darsts under a policy of automobile liability insurance, filed a declaratory action requesting that the trial court find that it had no duty to defend or indemnify the Darsts, either under the liability or uninsured/underinsured portions of its policy. Id. at 725, 719 N.E.2d 24. The trial court eventually granted summary judgment in favor of Grange. Id.

{¶ 18} On appeal, the boys' father contended that Grange was obligated to provide uninsured coverage since his sons' injuries arose out of the ownership, maintenance, or use of an uninsured vehicle, as required by the Grange policy. Id. at 725, 719 N.E.2d 24. The trial court had disagreed, finding that the boys' injuries arose out of playing with matches, and did not occur as a proximate result of the use of the vehicle as an instrumentality. Id. at 726, 719 N.E.2d 24. The Second District reversed, holding:

{¶ 19} "The phrase 'arising out of' has been defined by courts as 'originating from,' 'growing out of,' and 'flowing from.' * * * Although the phrase implies that there must be a causal connection between the ownership, maintenance, or use of the uninsured motor vehicle and the insured's injuries, courts have

stressed that the issue is not one of proximate cause. * * * Rather, 'it is sufficient if the [ownership, maintenance, or] use is connected with the accident or the creation of a condition that caused the accident * * * [and that] there be a factual connection growing out of or originating with the [ownership, maintenance, or] use of the vehicle.'" (Citation omitted.) Id. at 727, 719 N.E.2d 24.

{¶ 20} In *Nord*, the Eighth District was confronted with a case in which plaintiff's decedent, Paul Nord, had been injured in the eye with a syringe dropped by a paramedic while being transported to the hospital. Id. at ¶ 2. Nord later died of unrelated causes, but his estate filed an uninsured-motorist claim against Motorists for the eye injury and related expenses. Id. The trial court granted summary judgment to Motorists on the basis that Nord's eye injury had not arisen out of the ownership, maintenance or use of an uninsured vehicle, but rather, from the negligence of the paramedic in dropping the syringe. Id. at ¶ 3.

{¶ 21} Evidently, there was no contention that the operation of the ambulance had caused the paramedic to drop the syringe. Id. at ¶ 10, 14.

{¶ 22} The Eighth District reversed the trial court. After an extensive citation to the opinion of the court in *Darst*, the Eighth District stated:

{¶ 23} "In this case, the decedent's injuries arose from the accidental dropping of the syringe. The ambulance, by its very nature, is equipped with syringes for use by EMTs. Thus, the presence of the syringe and the technician could be viewed as part and parcel of the ownership, maintenance or use of the ambulance. The fact that the injuries arose by virtue of a true accident rather than an unsuccessful medical procedure en route to the hospital is not in dispute. Thus, we find that reasonable minds could conclude that these particular injuries arose out of the ownership, maintenance or use of an uninsured motorists vehicle." Id. at ¶ 14.

{¶ 24} The Eighth District then proceeded to distinguish the factual and legal situation presented in *Nord* from the cases relied upon by Motorists, i.e., *Kish v. Cent. Natl. Ins. Group of Omaha* (1981), 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288, and its progeny. The Eighth District noted that in *Kish* and its progeny, the Ohio Supreme Court had determined that intentional, criminal actions broke the chain of causation in negligence cases, such actions being "wholly disassociated from and independent of the use of the vehicle * * *." *Nord*, 2003-Ohio-6345, at ¶ 16. The Eighth District concluded, "These cases are simply unhelpful in determining whether injuries sustained from accidents caused by instrumentalities typically used in ambulance travel arise out of the use of the ambulance." Id.

{¶ 25} *Darst* and *Nord* represented the best analysis available under Ohio law of what constitutes the "ownership, maintenance or use" of a motor vehicle at the

time the trial court rendered its judgment in this case. The court very properly cited them in reaching its conclusion that any negligent supervision of Schmidt by the Griesmers did not constitute an intervening act separate from the initial negligence in the use of the Summerville van, i.e., driving it into the culvert.

{¶ 26} However, in *Nord v. Motorists Mut. Ins. Co.*, 102 Ohio St.3d 1421, 2004-Ohio-2003, 807 N.E.2d 366, the Supreme Court accepted a discretionary appeal from the Eighth District's judgment. In *Estate of Nord v. Motorists Mut. Ins. Co.*, 105 Ohio St.3d 366, 2005-Ohio-2165, 826 N.E.2d 826, a unanimous court, speaking through the Chief Justice, rejected the reasoning applied by the Eighth District and reversed, reinstating the grant of summary judgment by the trial court. Id. at ¶ 15. The court first noted that "[t]he fact that *Kish* and *Lattanzi* [*v. Travelers Ins. Co.*, 72 Ohio St.3d 350, 650 N.E.2d 430 (1995)] involved intentional criminal acts is not significant. The determinative factor in those cases was the absence of a causal nexus between the injury and the uninsured motor vehicle." Id. at ¶ 13. The court then held:

{¶ 27} "In the instant case, the carelessness of the paramedic caused Nord's injury. The paramedic's use and dropping of the syringe were unrelated to the ownership, maintenance, or use of the motor vehicle. Appellees have not alleged a causal link between the ambulance and the injury-causing accident, nor have they presented evidence that the ambulance was negligently operated or that the movement of the ambulance effected the injury-causing accident. Instead, appellees emphasize that ambulances are equipped with syringes, and they maintain that uninsured-motorist coverage arises because the situs of the accident was an uninsured motor vehicle. *An accident, however, does not arise out of the ownership, maintenance, or use of an uninsured motor vehicle merely because it fortuitously occurs within an uninsured motor vehicle.* If we were to so conclude, we would supplant the causation requirement, which the words of the policy demand, with a much broader factual-connectedness requirement * * *." (Emphasis added.) *Nord* at ¶ 14.

{¶ 28} Generally, "the negligence of an original tortfeasor will not be deemed a proximate cause of an injury if it is superseded by the negligence of an intervening tortfeasor * * *." *McCrystal v. Trumbull Mem. Hosp.* (1996), 115 Ohio App.3d 73, 85, 684 N.E.2d 721.

{¶ 29} " 'The Supreme Court of Ohio has consistently defined an intervening cause as an act or force which breaks the causal connection between the original negligent act and the resulting injury. * * * To constitute an intervening cause, the second act must be both "independent" and "new." In the context of this analysis, the second act is "independent" from the original act if it was not brought into operation by the original act; i.e., the second act must not

have occurred as a result of the first. To be considered "new," the second act must not have been reasonably foreseeable when the original act occurred. * * *

■ {¶ 30} "If both prongs of the foregoing definition are satisfied, the second negligent act becomes the sole proximate cause of the resulting injury. As an intervening cause, the second act "supersedes" the original act, and the original tortfeasor is absolved from any liability.'" (Internal citations omitted.) *McCrystal*, 115 Ohio App.3d at 85, 684 N.E.2d 721.

■ {¶ 31} In the instant case, the trial court granted Lloyd's summary judgment motion and denied Progressive's, deeming that, pursuant to *Darst*, any negligent supervision of Schmidt by the Griesmers failed to break the causal connection between the original negligence of driving the van into the culvert. That is, without the initial negligent ownership, maintenance, or *use* of the van, there would have been no need to move Schmidt from her secured wheelchair.

{¶ 32} Given the Supreme Court's holding in *Nord*, however, it seems evident that *Darst*, too, is infirm. The evidence adduced in relation to the summary judgment proceedings in this case indicates that the Griesmers moved Schmidt from her secured wheelchair to an unsecured wheelchair—then left her in that unsecured wheelchair for at least an hour, unwatched and unsupervised. It was during this period that she fell. Given the close attention to the causation demanded by the Supreme Court in *Nord* at ¶ 14, we think that reasonable minds could conclude that the failure of the Summerville employees to return Schmidt to her secured wheelchair, for more than an hour after the event requiring them to move her, could be deemed an "intervening" or "superseding" cause. Applying the two-prong test we set forth in *McCrystal*, the moving of Schmidt may not have been an "independent" act, as it could be considered as resulting from the original negligence of driving the van into the culvert. But the failure to return her to her original wheelchair did not, necessarily, result from the negligent operation of the van. Id. at 85, 684 N.E.2d 721. Further, the "new" act of negligence—failing to return Schmidt to her original wheelchair for more than an hour—might very well be considered as unforeseeable as a result of the negligent driving of the van. Id.

■ {¶ 33} "[T]he issue of intervening causation generally presents factual issues to be decided by the trier of fact." *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 269, 617 N.E.2d 1068. Given the law set by the Supreme Court in *Nord*, summary judgment is inappropriate for either Progressive or Lloyd's. The trier of fact must determine whether the failure to supervise Schmidt correctly, by putting her back in the secured wheelchair, broke the chain of causation commenced by driving the van into the ditch. Therefore, Progres-

sive's first assignment of error has merit insofar as the grant of summary judgment to Lloyd's is concerned, but fails regarding the denial of summary judgment to itself.

{¶ 34} Furthermore, a determination regarding causation will determine the other assignments of error raised by Progressive—i.e., whether Lloyd's had a duty to defend the underlying wrongful-death and survivorship action and whether the Lloyd's policy was primary insurance for that case. The Lloyd's policy contains an "other insurance" clause providing, "If other valid and collectible insurance is available to the 'Insured' for a 'Claim' we cover under this policy" then (1) Lloyd's may, but is not required, to defend the insured and (2) the Lloyd's policy is excess.

{¶ 35} If the trier of fact should determine that the chain of causation starting with Crum–Griesmer's negligence in driving the van into the culvert was unbroken by the negligent act of failing to put Schmidt back into her wheelchair, then the Progressive policy was primary, and that of Lloyd's, excess. However, if failing to put Schmidt back into her secured wheelchair broke the chain of causation, then under the reasoning set forth by the Supreme Court in *Nord,* the Lloyd's policy would be primary, since the Progressive policy of uninsured/underinsured insurance *should not have been available and/or collectible.* If the chain of causation was broken, then the underlying case was not a valid uninsured/underinsured claim. *Nord* at ¶ 14.

{¶ 36} Nevertheless, Progressive was required by R.C. 3937.21 to defend because Lloyd's refused to come forward. The public policy embodied in R.C. 3937.21 is meant to assure that insureds in motorists cases receive a defense—not to allow potential primary insurers, such as Lloyd's herein, to force coverage by operation of law, and a well-drafted "other insurance" clause, upon motorist insurers which may not even be liable at all under controlling Supreme Court case law.

{¶ 37} The foregoing analysis also applies to the alternate basis for upholding its grant of summary judgment advanced by Lloyd's: that Progressive acted as a volunteer in defending and settling the underlying case. This is untrue. R.C. 3937.21 required Progressive to defend the case, since Lloyd's would not involve itself. Lloyd's cannot now be heard to rail against Progressive's handling of the matter.

{¶ 38} The judgment of the Lake County Court of Common Pleas denying Progressive's motion for summary judgment is affirmed; otherwise, it is re-

versed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

RICE, J., concurs.

GRENDELL, J., dissents.

GRENDELL, J., dissenting.

{¶ 39} The majority opinion reverses the grant of summary judgment in favor of Certain Underwriters at Lloyd's London on the grounds that a genuine issue of material fact exists as to whether Schmidt's injuries arose out of the "use" of an automobile. I must respectfully dissent.

{¶ 40} As an initial matter, whether the coverage exclusion of the Lloyd's policy applies in the present case is not a factual issue for the jury to determine. The interpretation of an insurance contract is a matter of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. The underlying facts of this case are not in dispute. The terms "ownership, maintenance, use or entrustment of any * * * auto" are not ambiguous. Therefore, it is for the court to determine whether Schmidt's claims arose out of the "use" of an automobile. Cf. *Kish v. Cent. Natl. Ins. Group of Omaha* (1981), 67 Ohio St.2d 41, 52, 21 O.O.3d 26, 424 N.E.2d 288.[1]

{¶ 41} In determining whether the exclusion for use of an auto applies, "[t]he relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." Id. at 50, 21 O.O.3d 26, 424 N.E.2d 288.

{¶ 42} Under the majority's analysis, Crum–Griesmer's act of driving the van into the culvert constitutes the original act of negligence, while Crum–Griesmer's act of moving Schmidt constitutes an "intervening" act, arguably unrelated to the use of an automobile.

{¶ 43} I disagree. The whole sequence of events resulting in Schmidt's injuries arose from the use of an automobile, in this case, a van. Crum–Griesmer's negligent act of moving Schmidt without securing her with safety straps was motivated by the need of two passengers of the van to exit it. The van that Schmidt was occupying had an estimated ten-degree tilt toward the right

---

**1.** Although the majority states that "given the law set by the Supreme Court in *Nord,* summary judgment is inappropriate," *Nord,* in fact, reinstated the original grant of summary judgment entered by the trial court.

because Crum–Griesmer had driven it into a culvert. Schmidt had to be moved because she blocked the only exit from the van. The other exits from the van were blocked because Crum–Griesmer had driven it into a culvert. Schmidt was left alone in the van so that Crum–Griesmer could summon a tow truck. Rather than being an independent, intervening act, moving Schmidt arose directly out of the use of the van.

{¶ 44} In *Estate of Nord v. Motorists Mut. Ins. Co.*, 105 Ohio St.3d 366, 2005-Ohio-2165, 826 N.E.2d 826, relied upon by the majority, the "absence of a causal nexus" between the injury and the operation of a vehicle was patent. Id. at ¶ 13. The reason for the paramedic's handling of the syringe in *Nord* was unrelated to the operation of the ambulance. The paramedic's dropping the syringe into Nord's eye was unrelated to the operation of the ambulance. The fact that Nord's injury occurred in an ambulance was a "fortuitous" occurrence. Id. at ¶ 14.

{¶ 45} In the present case, as demonstrated above, the reason for Crum–Griesmer's moving Schmidt was inextricably linked to the use of the van. For the foregoing reasons, I respectfully dissent.